California false imprisonment can be committed by violence, menace, fraud, or deceit. The restraint of one's liberty can be committed by words alone, and nothing in the statute requires any physical contact with another person. The government argues that this crime should nonetheless be considered categorical crime of violence. So, Counsel, just so I understand where we are in terms of what we're trying to decide, in this case, your client pled guilty to committing false imprisonment by way of menace. He did, but we don't even get to the charging documents in this case, because under a Taylor analysis, we first look at the general statute, and then we move on to the other. Well, in this case, we don't get to modify it, and I'll explain why we don't. Yes. I think we should first talk about the false imprisonment statute itself and whether it categorically constitutes a crime of violence. Right. It does not. And the reason it does not is because the Supreme Court said that for a crime to fall within the residual clause of the ---- So we're to the residual clause. That's do all the parties agree that we're deciding whether or not false imprisonment is a crime of violence under the residual catch-all phrase, right? Right. Okay. And the Supreme Court said that in determining whether a crime falls within the residual clause, the crime by its nature must create a serious potential risk of physical injury to another. Right. This Court on Bonk in Navarro-Lopez determined that the crime by its nature means that the crime must necessarily involve a serious potential risk of physical injury. So where Navarro-Lopez has construed James to mean that you necessarily must have the serious potential risk of physical injury, here we do not have that, and inquiry goes no further. I think you're confusing the analysis because Navarro-Lopez and Jennings go to whether or not the modified categorical approach is applicable where the crime is missing an element of a generic crime of violence. I think the first thing we have to look at is whether Section 237 falls within the sentencing guidelines, whether it has an element, number one, whether it has an equivalent to burglary of a dwelling, arson, extortion, use of explosives, or involves conduct that presents a serious potential risk of physical injury to another. And once we determine that question, then we go to the second determination of whether or not we can employ the modified categorical approach in this case, which is what Navarro-Lopez and Jennings go to. Well, Navarro-Lopez goes to the categorical analysis as well. Navarro-Lopez was also construing Taylor. How about just answering the question and explaining your reasons for the answer to the question as to whether or not false imprisonment under Section 237 is a crime of violence under the sentencing guidelines? It's not a crime of violence. And it's not a crime of violence. It's not a divisible statute. It's the sentencing enhancement of the statute that can be where you can violate by violence, menace, fraud, or deceit. So when it's not a divisible statute and it can be committed in a myriad of ways, the statute itself does not create a physical, any type of physical contact with another person. So there's no serious potential risk of physical injury to another person. Why is it not divisible if there are alternate ways it can be committed? It can only, because the heart of the offense, the California appellate courts have construed the heart of the offense to be the taking of the personal liberty or the restraining of a person's liberty. That is what the offense is. That is what the violation is. So how does that compare to the generic crime? What do we compare it to in terms of the generic crime? Well, for purposes of the residual clause, you're comparing the elements of false imprisonment to determine whether they fit in. What are you comparing it to? To the federal definition, a serious potential risk of physical injury. We're comparing it to subsection 2 of section 4B1.2. And under Begay, we conducted two-step analysis. And so we ask whether the conduct involved presents a serious potential risk of physical injury to another. And then go on to compare it. Is it of the nature of risk or degree of magnitude of the four listed crimes? And I want to know why you think it doesn't involve conduct that presents a serious potential risk of physical injury to another. Because the words itself in the statute do not say anything about having any element of a physical injury to another or of a potential risk of physical injury to another. Well, it does say something about it. It says if the false imprisonment is affected by violence, menace, fraud, or deceit, it shall be punishable by imprisonment in the state prison. So it distinguishes false imprisonment and the four means of accomplishing it. It distinguishes – it shows different ways that it can be effectuated. But the statute is still one crime that you commit. It's false imprisonment. Even were this Court to define – I suppose we don't see it that way, especially since the California courts have separately defined the crime by the type of means. For example, a couple of the cases I saw talked about affecting a crime by menace and what isn't – how California interprets false imprisonment by menace. Well, the California courts actually say it's one unitary offense. But even assuming this Court finds that it's a divisible statute, menace in and of itself does not create a serious potential risk of physical injury. A perpetrator does not even have to be present. What is menace? Menace is a threat of harm. That threat of harm does not have to be to a person. The threat of harm can be to property. The threat of harm can be to one's character. The perpetrator does not even need to be in physical proximity of a victim in the case. When you look at what's been construed to be a crime of violence thus far, we have burglaries and variations on the burglary theme, which was what the ACCA – the very offense the ACCA sought to protect against. And then we have assault and sexual assault, offenses that necessarily have physical contact or necessarily have a knowing act to cause physical injury. So, counsel, what do we do with the language in James v. United States, the Supreme Court case that said to determine whether the conduct, it comes within the definition of violence, we look at whether in the ordinary case the conduct presents a serious potential risk of injury to another. So what you're telling us are the hypotheticals. But in the ordinary case, how would false imprisonment conduct manifest itself? First, I'm not talking about hypotheticals. The examples I have given are examples from California. How many cases do you rely upon to support your argument that is generally not a menacing or a threatening of violence in the false imprisonment context? There were approximately three cases that I provided. And I know the government has, you know, provided about 50 cases to try to canvass appellate case law to show what. Well, we rejected that. But even doing that, you can't canvass appellate case law. And the reason you can't canvass the appellate case law is because it represents only, it doesn't represent the other 98 percent of the cases where somebody has pled guilty to the offense. What is false imprisonment by fraud or deceit? And are there any cases in California saying what those crimes are? An example of a California case with fraud or deceit would be a case where a dad told his children that they were going to go, he was going to move them to another place without their mother knowing. And he told them that their mother was not really their mother. That is an example of false imprisonment by fraud or deceit. And again, there's no necessary physical contact or physical injury to the, or even a potential for physical injury to the person. Okay. So you're running out of time. So let's just move on for a minute, assuming we agree with you that false imprisonment by menace is not categorically a crime of violence, just assuming for purposes of argument. Because certainly if it was false imprisonment affected by violence, we might have a different answer to that. And the next question I have, and I think this is where you started out, is can the Court even apply the modified categorical approach? In other words, does the crime of false imprisonment by menace include every element of the generic crime? No, it doesn't. Why is it missing? It's missing the serious potential risk of physical injury to another. It's missing purposeful, violent, and aggressive conduct. Menace, a threat of harm, doesn't even have to be harm to a person. So it's missing essentially all of those elements. So under Jennings and Navarro-Lopez, we can't go any further. I think it's important under the purposefulness prong to note that in United States v. Coronado, this Court indicated that a general intent crime where there's an intent to do an act, but not an intent to do the harm, is not purposeful conduct. When looking at the case of Coronado that defined what purposeful conduct is, there's no purposeful conduct in false imprisonment categorically or even if you get to where you look at false imprisonment by menace. If there's no further questions, I'll save the remainder of the time for rebuttal. All right. Good afternoon. May it please the Court. Mark Rahe for the United States. Your Honors, felony false imprisonment in California most certainly presents a serious risk of physical injury in the ordinary case. Just a couple points I'd like to start off with. It appears my opponent is very much fixated on whether contact or injury is an element of the offense. That is most certainly not required, and we know that for a couple of reasons. First of all, the 4B1.2 definition, which has the two parts for the crime of violence, the first one is prefaced with the language, has as an element, the use, attempted use, or threatened use of force. The residual clause, which we are construing here today, does not start out with any has as an element prefatory language, and in fact simply says, by its nature, presents this injury, but also point out extortion. Extortion is one of the four enumerated offenses. This can be conducted by words alone. Somebody can even mail an anonymous letter to somebody threatening to disclose embarrassing secrets if they don't get information. They can do this over the telephone. So it doesn't have to be, again, some prerequisite of physical contact or physical touching. And when this Court is not writing on a blank slate either, there are at least five separate circuits, the 7th, 5th, 10th, 3rd, and 11th, whose cases we have cited, not only in 28J letters but in our supplemental briefs, every single one of them has found that false imprisonment meets this residual clause definition. And they do so, again, because Judge Rawlinson already pointed out one of the things. Look, this isn't an easy test to satisfy, but it's not as hard as the defense would have you make it out. James says the ordinary case. United States v. Meyer from this Court says most cases. Even Begay itself, which requires the three added purposeful, violent, and aggressive conduct factors, says typically in the typical case. So, again, it is not enough to hypothesize situations where a felony false imprisonment may not cause this injury. I mean, every single one of the cases talks about that. James. James says one can hypothesize attempted murder where a gun, unbeknownst to the shooter, has no bullet. So by definition, nobody could have been harmed when he pulls the trigger. And what did the Supreme Court say? That enough isn't – that is not enough. Counsel, what is your argument going to? Is it going – are you arguing that this is a categorical crime of violence? Absolutely. Okay. So how does false imprisonment by menace involve conduct that presents a serious or potential – a serious potential risk of physical injury to another? I'm going to – I'll start that out by saying physical or felony false imprisonment by itself already has those elements, Your Honor. There's personal liberty by itself. It's personal liberty under California law. Right. That we're interpreting. Exactly. And that statute, I believe it's written in the 1870s. You know, that's sort of an odd Victorian-sounding thing. What we need to look at, then, are the – Well, we have to interpret the words as they're written. Absolutely, Your Honor. But then I was getting to that. Then we need to look to the jury instructions and the case law, because my opponent never talks about what the elements are in every single case. Whether it be by violence, menace, fraud, or deceit, there has to be an intentional confinement or restraint of the person of another without their consent, and you have to make them either go or stay somewhere where they don't want to be. This, by definition, presents a serious risk of injury because you are restraining their liberty. And as the Seventh Circuit pointed out in the Billups case, people want to be free. You can't just walk down the sidewalk and put your hands on somebody and expect that they're not going to resist. So there's a very – But we're not – in this case, we are talking about false imprisonment by menace. So we're not talking about putting your hands on somebody. California law has defined menace as a verbal threat. A threat of harm. Yeah, a verbal threat, but it's a verbal threat. So in your example, you're arguing to me it's putting your hands on somebody. So my mind rejects that example. Okay. Let's get to an example that – Absolutely. – that threatens the, you know, risk of physical injury by – because of the threat of harm. People v. Henderson. I take a gun. I point it at you, and I say, you're coming with me. You got a gun. Pre-dangerous. That's not violence? That's menace. Menace, in fact, people v. Maddie, M-A-T-I-A-N, we cited it. It's a California – What? California – Is that in your supplemental brief? Yeah, it's in the supplemental brief, as well as the July 2, 2009 28J letter. Right, which is not an appropriate 28J letter. No, that's a good one. Right. And I got you – First one. Right. First one. Okay. And Maddie and what they – what the Court of Appeal did there, conducted an extensive survey of what menace cases were, and it said they almost always fall into two categories. One of them involves use of a deadly weapon, brandishing a knife, brandishing a gun, brandishing a baseball bat, or the other one is a verbal threat of harm. I don't know of a single case where somebody has been convicted of false imprisonment by saying, you know, threatening people's property. But again, even if that were the case, extortion, extortion is one of the enumerated offenses. The essence of extortion can be a threat to property. What about the example opposing counsel gave of a noncustodial parent who deceives his or her children and takes them away against their will by deceit, by telling them a lie, that your mother doesn't want you anymore, it's not your real mother, whatever. How does that meet the definition? I would say by – again, if the test is by its nature, tell me what parent, when they find out that their child has been taken from them, wouldn't necessarily resort to violence to get that child back. Or the child, once he realizes that he's been tricked, not making an effort to escape. And these theories, this is exactly what the court, the Seventh Circuit, said in Billups. They said even false imprisonment by deception, there's always that chance, in fact, I think they used the phrase, ever-present possibility that the victim will discover the ruse and then take efforts to free themselves. Then the perpetrator may use force or violence and, therefore, risk the injury to suppress that person. Let's say you lock that person in a third-story building. They may want to jump out the window. They may have to break glass. I mean, there's always that risk. And, again, I want to make this point as well in the beginning of our brief. It's not an actual risk that's required. It's not even an actuality. It's a serious potential risk. As James said, that's two levels of probability. And it's not just death or even great bodily injury. It's any injury. And I'd say, again, to submit, on the ordinary case, the typical case, in fact, I'll come back to false imprisonment by deceit. I believe in the first 20 that Jay has cited, the California, at CalCrim 1240, the Judicial Council said in 125 years we found one published case of false imprisonment by deceit, and that's the case we just discussed, Rios. In that July 2009-28 Jay letter, I found an unpublished one by the name of Garcia, and I think its facts are an excellent example. Basically, the defendant was roommates with the victim's son. The defendant goes to the victim and says, your son is in the hospital. I'll take you right there. It's in Orange County. Keeps driving past Orange County. Oh, it was my mistake. It's in San Diego. Keeps going past San Diego, enters Mexico. And the mother, by this point distraught, not knowing what's going on, says, if you don't stop this car, I'm going to jump out. I think that Garcia case is an excellent example of how even in fraud cases, once people realize that their liberty has been restrained, there is a serious potential risk. And, again, it doesn't even have to be an actual risk. It can be less than that just by the plain language of the residual clause. Why do you think there are so few cases on false imprisonment but fraud and deceit in California in 100 years? You know, I just don't think it happens that often. I mean, that's, you know, any time I go into Westlaw, if I do false, you know, slash one imprisonment, the cases that come up, they're always horrific facts. I mean, I don't know, but the point is. I mean, I'm just wondering whether prosecutors aren't prosecuting or only the horrific facts are the ones that get prosecuted and get appealed. It could be. You know, and actually on that point, Your Honor, I'd like to address something my opponent brought up when she talks about, well, we rely exclusively on appellate case law. I mean, it's true. I don't have statistics. This isn't like the Supreme Court's case in Chambers, which involved escape. Escape is a Federal offense, so the Sentencing Commission is able to chart that. Right. False imprisonment, there's no Federal. Let me. Okay. So I just want to just, you know, trying to get this right, what are the circuit courts, the circuits that you say all have decided false imprisonment is categorically a crime of violence? The Seventh. Okay. Do you know the case name or just say the case name? Billups. Okay. Go on. And Wallace. There's two cases. The Fifth Circuit has Riva. Okay. Tenth Circuit has Zamora. The Third Circuit has two unpublished cases. One is Smith. The other, McMiller. Are you allowed to cite unpublished cases from the Third Circuit? I have no rule that prevents me in this Court. Okay. Yeah. And the Eleventh Circuit has Nunes. N-U-N-E-S is also unpublished. And were those cases, did they involve menace or were they by other means? Well, none of them were California statute. Okay. So, you know, as far as the actual points of that, I'm not sure. But I do know that the Seventh Circuit, Fifth Circuit, both Third Circuit cases, and the Eleventh Circuit all talked about false imprisonment by deception. And they said notwithstanding that deception, there's always the chance that the victim will discover what's going on, and then it's like a powder keg. And in fact, this Court has a case called Riley from 1999. It involved Louisiana rape statute, where the Ninth Circuit basically, you could even have committed that offense by deception. And they said, you know what, it still presents a serious potential risk. Now, did the district court here conduct its analysis under the categorical approach or the modified categorical? I think it was when she went to the modified. I think in the end, modified, right, because she didn't. She said, you know what, I don't – she thought the easier way, the most direct way, was to go right to the menace part, because that is what he admitted in his plea agreement. But so what do you do in the face of Navarro, Lopez or Jennings? Right. A couple points, Your Honor. Jennings was an ACCA case, Armed Career Criminal Act, and I understand that this Court says we basically look to the same law. I know. You made that clear in Coronado. That's on the categorical level. I still submit to you that there is a major difference between ACCA, which has no commentary, and 4B1.2. The commentary in 4B1.2 at Note 1, Paragraph 2, specifically says that you can look to the conduct expressly charged. And I would say this entire modified.  That's the problem in this case. I haven't been able to find the indictment or a criminal complaint or anything in the record that tells me what was charged. It is. There's one document, and it's apparently – it reflects his guilty plea. Right. And I – when I inherited this case on appeal, we – you're right, that charging document is not part of the record. What we did, we attached it as an appendix to our supplemental brief that we filed on 81009, and we asked this Court at footnote 11 to take judicial notice of that. So you attached it to your supplemental brief? Yeah. Is that problematic that it wasn't in front of the district court? We would submit it's not, Your Honor, because we asked for judicial notice. The Federal Rules of Evidence under 201 allow for judicial notice at any stage of a proceeding. Those rules apply to the Ninth Circuit, and there are anecdotal examples of this Court taking notice. In fact, there was a case a week or two, Morales-Espinosa. It was adverse to our district. The published case where Judge Pius took judicial notice of jury instructions for a modified categorical inquiry for the first time on appeal.  And where did you say you attached it? It's the appendix to the document filed at 81009, which was the first, the 30-page supplemental brief that we filed after last year's argument. And I believe it is counted. I don't see it. It's sort of the last pages. You have to look hard for it because it's kind of the way it's printed out. Coming back to Jennings, too, you know, Jennings, I understand, there are cases, other cases that apply the modified categorical approach. There's something inherently wrong about Jennings, because it wasn't intentional. Well, I can certainly understand. I mean, I have a hard time following the Navarro-Lopez-Jennings thing myself. So I agree, I mean, that that's the law that we're having to apply. And, you know, I say it, Your Honor, again, when you look at the two tests for crime of violence, the first one says has as an element, use attempted, use threatened, use of force. The one that we're talking about doesn't say has as an element a risk of injury. So in a way, Jennings, I think, sets the bar too high. There are very few statutes that expressly require, as an element, the creation of such a risk. Have you noticed that there's a discrepancy between the complaint and the plea agreement in this case? In what way, Your Honor? The plea agreement says he pleads guilty to count three, right? Correct. Okay. Count three of this complaint is false imprisonment by violence. Exactly. And that's why this Court is always right. Titles, it's not the title. That's just a summary of the charge. It's the charging language that sets forth the forum. The charge is violation 236-237, but the count he pled to was by violence. That's the title of it. But the language is in the disjunctive. And then the plea agreement, which is a judicially noticeable document under Shepard, only says by menace. And I know that isn't it. But it has to match, though. Yeah. For purposes of applying the modifier categorical analysis, it has to match. Well, what you pled to has to match the generic definition, but what you pled to. No, no, no, no, no. What he pled to has to refer back to what's in the complaint so that we know that what was actually pled to was what is in the complaint, because normally it says as charged in the complaint. Because if you – when you have a plea agreement, there have been all kinds of negotiations, and what's in the complaint isn't necessarily what the person pled to unless it's incorporated in the plea agreement, and that's why it's a problem. Well, I respectfully disagree, Your Honor. If a statute says I can violate it by A, B, or C, and my plea agreement says I violated it by C, that's a match. This Court's modified categorical, you know, I think what you were talking about, those cases, Vidal, that's when they plead no contest. I mean, here we actually have a signed plea agreement, and it narrows. I would say there would be a problem if not only the title, as Judge Wardlaw points out, said by violence, but if that were the only language in the actual charge that on such-and-such date in such-and-such county, the defendant committed false imprisonment by violence. And then if we see a plea agreement that says I did this by menace, then I'd say, well, wait a second, that's not a match. But as this Court's well aware, California prosecutors, they routinely charge all of the possible ways to commit a crime. And then when you have a modified doc that says one of them, I don't believe the law requires. Did the complaint charge all three of them? Yes. In fact, it might have even done all four. It did. Well, but it calls the count three, false imprisonment by violence, and then it doesn't really specify, although the plea, the complaint does mention use of a handgun, which, you know, if this were actually part of the record, might feel more comfortable with your argument. And the other one says by menace while what he pled to was by menace while aiding a third party, which I really don't understand what that means. Well, I think it just means he didn't do it alone. But he's admitting to menace. And this goes back to your question to me a few minutes ago. What is it about menace that brings it within this definition? What I answered with was regardless of the way you commit this crime, every single incident requires an intentional confinement without the consent of the victim and making them stay or go somewhere where they don't want to stay. With menace, you now add an element, a threat. And, yeah, it can be implied, but it has to be a threat of harm. I'd say when you add all these things together, the first two elements alone, those other five circuits that are enough to present the serious risk, if the whole point of the serious risk is the confrontation, the possible hostile confrontation, I would say when you threaten somebody, you have that. And, again, if burglary is one of the enumerated offenses and it's supposed to set the bar by which we measure things, it's beautiful outside. It's broad daylight. A lot of people are at work. Their homes can be burglarized right now. There is no risk of a confrontation. Here, you actually have to threaten somebody. And I know, again, if my defense counsel, I may not have to touch you. I may not have to be this close or this close, but I have to get this threat through to you. But you don't have to use any weapon necessarily. Not necessarily, but it has to be a threat of harm. I mean, in all honesty, Your Honor, at some point, you know, between what the law shows and what somebody wants to imagine. But it could be a threat of harm to property. That's what extortion is. Yeah, and extortion is an enumerated offense. Extortion is you're threatening the person unless they give you their property. I believe the law says you can also be threatening their property, Your Honor. But with that, one more point I wanted to point out. I remember you asked defense counsel how many cases they rely on. She said three. Two of them aren't even decided under this statute. When she talks about threats to character, that was not the two cases that she cited. One was Moore. One was Cicero. One was abduction of a woman for purposes of defilement. And the other one was lewd and chivious acts on a minor. You're way over your time, sir. I apologize, Your Honor. Thank you. Thank you for your indulgence. If no further questions, I will submit. And given that Judge Smith isn't here, I mean, he may want, he might issue or want to issue an order sort of asking for further explanation of some of this later. I just want to warn you about that. But anyway, so let's hear your rebuttal. First, I'd like to address the government's argument with respect to the other circuits. The Seventh Circuit case that the government relies on billups is important because it cites within it two other Seventh Circuit cases where under those state statutes, the Seventh Circuit determined that false imprisonment is not a crime. It is not categorically a crime of violence. And the reason the Seventh Circuit determined that those statutes were not categorically a crime of violence is because they, those statutes include fraud and deceit. That is in Hagenau and Gilbert, which is cited within billups. The Riva case had very little analysis. And in the Zamora case, there was actually a fear of violence to the person, which was an element of that false imprisonment statute. So the out-of-circuit cases are really of no value except for the fact that the Seventh Circuit has found in statutes similar to California that it's not categorically a crime of violence. Counsel, may I ask you, are you familiar with a 2010 decision from this Court, United States v. Melchor Messina? Yes, Your Honor. And that case appears to say that the Colorado menacing statute was categorically a crime of violence. Does that affect your argument at all? It does not, because the Colorado statute requires threat and physical action and use of a deadly weapon, which California does not require. You know, the extortion argument that the government makes, the gay is actually a place in the Supreme Court where we can find where they talk about what extortion is, and they say that extortion can only mean obtaining property through the threat of physical injury to a person. Before you leave that case, it appears to me that the Colorado menacing statute said a person commits the crime of menacing if by any threat or physical action he or she knowingly places or attempts to place another person in fear of imminent serious bodily injury. Does it require the use of a weapon? The attempt to place the person in fear of imminent bodily injury is something that we don't have in the California statute. The California statute doesn't require any threat to physical bodily injury or imminent bodily injury, which is vastly different. The government's argument that, well, somebody can react during a physical injury to another person's bodily injury is something that we don't have in the  The government's argument that somebody can react during a false imprisonment is also, you know, unavailing due to Chambers where a similar argument was rejected by the Supreme Court in Chambers. Here in this case, there's nothing that requires any type of serious potential risk of physical injury to another, and it's the government who has the burden of establishing that it does clearly and unequivocally. And in this case, they've not done that. The last I would like to speak with is the fact that Christensen has defined what typically means in Begay. Christensen, a Ninth Circuit case, defined typically to also mean necessarily. So when we're looking at the purposeful, violent, and aggressive cases, we're looking at that it necessarily involves purposeful, violent, and aggressive conduct, and it doesn't. And it doesn't necessarily involve a serious potential risk of injury to another. In this case, all we really have is Navarro-Lopez, which provides a workable framework. And when the Court follows the Navarro-Lopez, then we go no further beyond the categorical approach, and it's not a crime of violence. Now, I would also just like to state that the criminal complaint is not something that can be considered where it's the charging document is so different from the judicially noticeable document that we have. So if we disregard the charging document and just look at the plea, what's the result? That it's not categorically a crime of violence, this Court doesn't get to the modified categorical approach. But even in a modified categorical approach, when you're looking at the language violated the personal liberty of Maria Gamboa by menace, by menace. By menace, yeah. Right. It fails to be a categorical crime of violence or it fails to be a crime of violence under any scenario. This is a difficult case. So we thank you, counsel, and appreciate the supplemental briefing and the arguing. And we will submit this case and adjourn for the rest of the day. Thank you.
judges: Wardlaw, Rawlinson, Smith N. R.